CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
APR 25 2007
JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| CATHY BEAMER, | ) | |
|     Plaintiff, | ) | Civil Action No. 7:06cv00454 |
| | ) | |
| v. | ) | |
| | ) | By: Michael F. Urbanski |
| JO ANNE B. BARNHART, | ) | United States Magistrate Judge |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
|     Defendant. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Cathy Beamer ("Beamer") brought this action pursuant to 42 U.S.C. § 405(g) for review of the Commissioner of Social Security's decision denying Beamer's claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383 ("Act"). This case was referred to the undersigned Magistrate Judge on August 29, 2006, for report and recommendation. Following the filing of the administrative record and briefing, oral argument was held on February 22, 2007. As such, the case is now ripe for decision.

The undersigned finds that substantial evidence supports the Commissioner's decision that Beamer retains the residual functional capacity to do a limited range of work at the light exertional level, including her past work as a flagger. Accordingly, it is recommended that the ALJ's decision be affirmed.

I.

Beamer was born on March 9, 1959. (Administrative Record [hereinafter R.] at 87) Beamer obtained her GED in 1990, completed one college course, and then completed a

Certified Nursing Assistant program in 1991. (R. 149, 171, 510-11) Beamer's most recent previous work includes that of a certified nursing assistant, flagger, and furniture finisher. (R. 91-98, 512-18) Beamer filed an application for benefits on or about November 23, 2004, alleging that she became disabled on July 1, 2004, due to diabetes, bipolar disorder, fibromyalgia, carpel tunnel syndrome, back problems, acid reflux, and abdominal pains. (R. 165-66, 532-35) Beamer did not note her problems with obesity in her disability claim. Beamer's claims were denied at both the initial and reconsideration levels of administrative review, (R. 16), and a hearing was held before an administrative law judge ("ALJ") on March 7, 2006. (R. 506-49) On March 20, 2006, the ALJ issued a decision denying Beamer's claims for benefits, finding that she retained the residual functional capacity ("RFC") to perform a limited range of light exertional work, including her past work as a flagger. (R. 22-24)

The ALJ's decision became final for the purposes of judicial review under 42 U.S.C. § 405(g) on June 29, 2006, when the Appeals Council denied Beamer's request for review. (R. 7-10) Beamer then filed this action challenging the Commissioner's decision.

## II.

Beamer argues that the ALJ erred in finding that she did not suffer from episodic panic attacks and, thus, could return to her previous work as a flagger, that her work as a flagger does not qualify as substantial gainful employment, and that because of her obesity she is unable to work as a flagger. (Pl. Summ. J. at 1-4) Accordingly, she requests that the decision of the Commissioner be reversed or, in the alternative, remanded for reconsideration in light of new evidence. (Pl. Summ. J. at 5)

Judicial review of a final decision regarding disability benefits under the Act is limited to

determining whether the ALJ's findings "are supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (citing 42 U.S.C. § 405(g)). Accordingly, the reviewing court may not substitute its judgment for that of the ALJ, but instead must defer to the ALJ's determinations if they are supported by substantial evidence. Id. Substantial evidence is such relevant evidence which, when considering the record as a whole, might be deemed adequate to support a conclusion by a reasonable mind. Richardson v. Perales, 402 U.S. 389, 401 (1971). If such substantial evidence exists, the final decision of the Commissioner must be affirmed. Hays, 907 F.2d at 1456; Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

### III.

Beamer argues that ALJ erred in finding that she did not suffer from episodic panic attacks which she claims preclude her from maintaining substantial gainful employment. Beamer does not challenge the ALJ's determination that she could meet the physical requirements of light work.[1]

At the administrative hearing, John Newman, a vocational expert ("VE"), testified that assuming claimant suffers from bipolar disorder with anxiety and panic attacks, is limited to light work, and can only manage limited lifting with her right upper extremity, she would still be able

---

[1] Light work requires exerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently, and/or a negligible amount of force constantly to move objects. Physical demand requirements are in excess of those for Sedentary Work. Even though the weight lifted may be only a negligible amount, a job should be rated Light Work: (1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls; and/or (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible.
http://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOTAPPC.HTM.

3

to work as a flagger. (R. 546-47) However, the VE continued that if in addition to the aforesaid symptoms, Beamer also suffered from episodic panic attacks and a panic disorder she would be precluded from doing any substantial gainful activity. (R. 547-48) The ALJ concluded that although Beamer's carpal tunnel syndrome, anxiety disorder, depressed mood, and bipolar disorder are severe impairments, they did not preclude her from doing a limited range of light exertional work, including her past relevant work as a flagger. (R. 18-22) The ALJ did not determine that Beamer suffered recurrent or severe panic attacks, and there is substantial evidence to support this conclusion. Accordingly, the ALJ's determination that Beamer could return to her past relevant work is not reversible error.

Beamer testified that her mental difficulties, namely her depression and panic attacks, are so severe she is unable to function in the workplace, to interact with others, and that she has difficulty even doing basic household management chores, such as grocery shopping. However, this stands in marked contrast to her functional abilities self-assessment. In that assessment, Beamer noted that she has house guests or goes to visit friends once or twice a week; she visits with neighbors across the fence; she drives herself places and on occasion she takes her neighbors to their doctors' appointments and runs various errands for them; she goes shopping once or twice a week for groceries, clothing, and cleaning supplies; and she manages her personal finances. (R. 105-06, 121, 124-26)

Similarly, Beamer's medical records are noticeably devoid of any indication that she suffers from disabling panic attacks or depression and, instead, demonstrate that her symptoms are well controlled with medication. In 2002, Beamer's physician, Dr. Elmarsy, reported that Beamer's mental condition, i.e., her depression, anxiety, and bipolar disorder, were stable and

4

controlled with medication, she was rarely sad, and she was becoming more socially involved. (R. 195-202) Likewise, in 2003 Beamer reported that her anxiety and depression were much improved, and she did not indicate that her anxiety and/or depression were limiting her social activities in any way. (R. 189)

In November 2004, Beamer began seeing Dr. Bere at Grayson Highlands Family Medicine & Obstetrics Office. Dr. Bere noted that Beamer continued to take her prescribed psychiatric medications, she was "well-appearing" with an animated affect, and she reported suffering only mild depression and anxiety. (R. 283-84) However, shortly thereafter, on December 20, 2004, Beamer stopped taking her psychiatric medications, decided to medicate with alcohol instead, and was hospitalized following claims of intense depression. (R. 226-29) Beamer was restarted on her medications, and her treating physician, Dr. Rana, found her mood dramatically improved with medication and that during her brief hospitalization she participated well in group activities and treatment, her mood was happy and full, her affect was bright, and her thought processes were logical and goal directed. (R. 226-57) Beamer was discharged on December 23, 2004. (R. 226)

On January 27, 2005, Beamer began seeing Dr. Miglani, at the Galax Mental Health Clinic. (R. 296-98) During her intake exam, Dr. Miglani noted that Beamer was originally treated at the Clinic in 1999-2000 for depression and panic disorder, but she did not follow-up with treatment. (R. 296) He further noted that although Beamer advised him that she had been recently hospitalized, she reported that since then she had been "doing well." (R. 296) During both this exam and a subsequent exam on March 10, 2005, Dr. Miglani noted that Beamer

5

exhibited no symptoms of psychosis or delusions, her affect was broad and euthymic[2], she was smiling, her attention and concentration were fully preserved, and she did not endorse any homicidal or suicidal ideation. (R. 293, 297) Dr. Miglani advised Beamer to continue on her medications. (R. 294, 298) Likewise, in June 2005, August 2005, October 2005, and December 2005, during subsequent exams at the Galax Mental Health Clinic, Beamer's physicians noted that she reported she was doing well on medication, and they found her affect continued to be broad ranging and fairly euthymic and her mood appropriate. (R. 411-18) During all these visits, Beamer only reported having an actual panic attack once, in October 2005. (R. 415) During her visit the following month she reported that she had not had any additional panic attacks. (R. 417)

Beamer's counseling progress notes from Mount Rogers Community Counseling Services from December 2004 through May 2006 reveal that although Beamer was at times sad and anxious, Beamer's general functional level was not impaired, her affect was appropriate, she was oriented in all spheres, she did not have homicidal or suicidal ideation, she was cooperative, and at most she suffered from mild anxiety and depression. (R. 289-92, 299-302, 419-27, 450, 477-81) Those notes also reveal that Beamer attributed her anxiousness and worry to her financial situation and her son's heavy involvement in drugs and drug trafficking; Beamer's counselor's found her responses appropriate to those situations. (R. 419-28, 477-81) Finally, although during one session Beamer claimed to have suffered panic attacks about twice a month since 1998, there are no notations in any of these records that Beamer reported that she actually suffered a panic attack while in treatment at Mount Rogers Community Counseling Services. (R.

---

[2]Euthymia is a state of mental tranquility and well-being, neither depressed nor manic. Dorland's Illustrated Medical Dictionary 650 (30th ed. 2003).

6

289-92, 299-302, 419-27, 450, 477-81)

Notably, in her self-assessment completed during her initial consultation in December 2004, Beamer reported that although her mental difficulties severely impact her money management abilities and mildly impact her ability to take medication, those problems in no way affected her social skills nor did they cause any impairment in her ability to go shopping, to assess resources, to take care of herself, and/or to manage her own transportation. (R. 304) Also noteworthy, in January 2005, Beamer advised her counselor she was functioning well, and Beamer's counselor advised her to seek employment. (R. 299)

Further, more recent records relating to Beamer's mental condition also suggest she does not suffer from debilitating depression and/or panic attacks. Beamer attached to her memorandum in support of summary judgment treatment notes from her treating physician at Mount Rogers Community Counseling Services which were not included with the medical records provided to the Commissioner. Those records reveal that in June 2006, Beamer reported that she was doing well overall, most days she was upbeat, her mood improved on the days she was able to get out of her home, and on exam, her physician found her to be calm, bright, and in a happier mood. Again, there is no notation that Beamer complained of experiencing any panic attacks. Likewise, recent records from Beamer's treating physicians establish that her mental condition is stable. Specifically, in January 2006, February 2006, May 2006, and June 2006 Laura LeRue, CRNP, of the Radford University Family Medical Center Clinic noted that Beamer's judgment and insight were normal, her mood and affect were normal, she was oriented, and that she was not suffering from hallucinations or homicidal or suicidal ideation. (R. 430-33, 475-76)

7

Case 7:06-cv-00454-JCT-mfu    Document 16    Filed 04/25/07    Page 7 of 14    Pageid#: 69

A state agency mental residual functional capacity assessment completed in March 2005 also indicated that Beamer does not suffer from debilitating depression and anxiety. (R. 319-35) After reviewing Beamer's medical records, Dr. Hamilton found that Beamer had moderate limitations in her ability to remember, understand, and carry out detailed instructions; to maintain concentration for a long period; to maintain punctuality and attendance; to complete a normal work week; to interact appropriately with the public; and to respond appropriately to changes in the work setting. (R. 319-20) He found she had no significant limitation in any of the other thirteen areas of mental residual functional capacity and, thus, is capable of performing simple, unskilled, competitive work. (R. 319-21) These findings were affirmed by Dr. Tenison in June 2005. (R. 322)

The only evidence Beamer offers in support of her claim that she is wholly disabled by panic attacks is Dr. Rana's statement in his treatment notes that "he recommended her to apply for disability based on either her psychiatric or medical problems, and she agreed with this plan." (R. 226) To the extent this can be construed to be an opinion that Beamer is disabled from working, it is unpersuasive. Opinions that a claimant is "unable to work" are not entitled to controlling weight because such decisions are reserved for the Commissioner. 20 C.F.R. § 404.1527 (e)(1) (stating a medical expert's opinion as to the ultimate conclusion of disability is not dispositive); <u>Morgan v. Barnhart</u>, 142 Fed.Appx. 716, 722 (4th Cir. 2005) (holding that a treating physician's opinion that claimant was "disabled," "unable to work," could not work an eight hour job, and/or could not do her previous work was not entitled to controlling weight). Moreover, as noted above, such a finding in this case is inconsistent with both Dr. Rana's treatment notes and the record as a whole and, thus, is not entitled to great weight. See <u>Craig v.</u>

8

Chater, 76 F.3d 585, 590 (4th Cir. 1996) (finding that a treating physician's opinion may be assigned little or no weight if it is conclusory and/or is not supported by objective testing or the record as a whole).

There is simply nothing in the record to support Beamer's testimony that she suffers from episodic panic attacks which prevent her from working. Beamer's voluminous medical records are noticeably devoid of evidence suggesting she suffers from regular panic attacks, much less panic attacks so frequent or severe as to render her unable to work. In fact, although on two occasions, during her hospitalization in 2004 and to her counselor in early 2005, Beamer made vague reference of having had panic attacks since 1998, she reported only suffering one actual panic attack between 2002 and 2006. Both her counselors and treating physicians repeatedly found that Beamer was mentally stable and that her anxiousness and depression are well controlled with medication and do not impact her functional ability. None of the treatment records suggest that Beamer should limit her exposure to social situations nor do they indicate that Beamer should not work. Beamer's reported functional abilities likewise indicate that her alleged anxiousness and panic symptoms have minimal, if any, affect on her functional abilities. Beamer bears the burden of establishing that she suffers from a disability, and the lack of any evidence of such a debilitating condition leads the undersigned to conclude that there is substantial evidence to support the ALJ's determination that Beamer's mental difficulties cause only a moderate functional limitation and, thus, do not prevent her from maintaining substantial gainful employment. 42 U.S.C.A. §§ 423, 1328(c); Heckler v. Campbell, 461 U.S. 458, 460 (1983).

## IV.

Beamer also argues that her past work as a flagger does not amount to substantial gainful activity because it was seasonal and temporary work, the wages she earned as a flagger were insufficient to qualify as substantial and gainful, and that that job is no longer available in significant numbers in the national economy. None of these arguments are meritorious.

Part-time work qualifies as substantial gainful employment if it involves doing substantial mental or physical activities and if the claimant does that work for pay or profit. 20 C.F.R. §§ 404.1572; 416.972. As Beamer concedes she worked as a flagger and was paid for her efforts, her argument regarding the seasonal nature of that employment is a non-starter.

Under the regulations, the relevant time period for determining if employment earnings are sufficient to qualify as substantial and gainful, they must be considered in the year in which they were earned. 20 C.F.R. ¶¶ 404.1574(b)(2); 416.974 (b)(2). In 1996, for employment to qualify as substantial gainful activity, a claimant must have earned at least $500.00 month, during the months in which she was actually employed. Id. There is no requirement that a claimant must have been employed full-time, year round. See id. Beamer concedes she worked full-time making at least $5.00 per hour.[3] (R. 173, 175, 469) This amounts to gross earnings of $800.00 per month and, thus, qualifies as substantial gainful employment.

Once the Commissioner finds that a claimant can return to her past relevant work, the

---

[3] The court notes there is some discrepancy as to what Beamer was paid as a flagger. In her handwritten Work History Report dated January 16, 2005, Beamer noted that she was paid $6.15/hour as a flagger in 1996. (R. 97) However, in the electronic disability report prepared in December 2005, Beamer averred that she was paid $5.50/hour when employed as a flagger in 1996. (R. 166, 175) Beamer now contends she was paid only $5.00/hour. Regardless, even assuming Beamer was paid only $5.00/hour, this was an amount sufficient to exceed the threshold limit for substantial gainful activity.

10

Commissioner need not determine whether the claimant's past relevant work currently exists in significant numbers in the national economy. Barnhart v. Thomas, 540 U.S. 20, 26 (2003). Rather, the finding that a claimant can do her past relevant work indicates by proxy that the claimant is able to do "some" type of work which is available in the national economy. Id. at 28. Thus, the Commissioner's determination that Beamer could return to her past relevant work as a flagger, without undertaking a separate analysis as to whether such work continued to exist in significant number in the nation economy, was not erroneous.

Accordingly, the undersigned finds there is substantial evidence to support the ALJ's determination that Beamer's past relevant work as a flagger qualifies as substantial gainful employment.

## V.

Finally, Beamer appears to argue that her obesity renders her unable to do her past relevant work as a flagger. The ALJ considered Beamer's obesity in making his determination that she retained the residual functional capacity to only do work at the light exertional level, and specifically that she could return to her past work as a flagger. The ALJ noted that Beamer's treating physicians have repeatedly advised her to do more exercise and her reported daily activities, including visiting with friends, running errands, shopping, gardening, and completing various household chores indicated her obesity did not substantially limit her functional abilities. (R. 23) These findings are consistent with the record as a whole. Beamer's physicians have repeatedly advised her to exercise more and to stretch to control her obesity as well as to control her pain and diabetes. (R. 190, 196, 198, 266, 274, 283-84, 378) In her functional ability report, Beamer stated that each day she washes dishes, does light housework, and goes to appointments.

11

(R. 102) She also noted that she is able to mow her lawn, garden, and wash windows, though she needs some rest breaks; she is able to do her own grocery shopping; and she is able to walk about a quarter of a mile before needing to rest. (R. 104, 107, 123-24) None of Beamer's physicians have suggested that she should limit her physical activity and her self-reported daily activities indicate she regularly engages in activities requiring moderate amounts of physical exertion. Accordingly, the undersigned finds the ALJ's conclusion that Beamer's obesity did not prevent her from being able to return to her past work as a flagger is supported by substantial evidence.

## VI.

In the alternative to finding that the ALJ erred, Beamer requests that the court remand this matter under sentence six of 42 U.S.C. § 405(g) for consideration of new evidence. Sentence six applies specifically to evidence not incorporated into the record by either the ALJ or the Appeals Council. The court may remand a case under sentence six to the Commissioner upon a showing of new, material evidence, and when good cause exists for the failure to incorporate such evidence into the record in a prior proceeding. 42 U.S.C. § 405(g); Borders v. Heckler, 777 F.2d 954, 955 (4th Cir. 1985).

A reviewing court may remand a case to the Commissioner on the basis of newly discovered evidence only if the following four prerequisites are met: (1) the evidence must relate back to the time the application was first filed, and it must be new, not merely cumulative; (2) the evidence must also be material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before her; (3) there must be good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant must present to the remanding court at least a general showing of the nature of the

new evidence. Borders, 777 F.2d at 955; see also Wilkins v. Sec'y, Dep't Health & Human Servs., 953 F.2d 93, 96 (4th Cir. 1991).

As noted above, Beamer's new evidence simply reiterates her counselors' and treating physicians' earlier treatment notes indicating that her depression and anxiety are well-controlled with medication and do not impact her functional abilities. As such, the court finds that this information would not have reasonably impacted the ALJ's finding that Beamer was not disabled. Thus, a sentence six remand is not warranted and the decision of the ALJ is affirmed.

## VII.

Based on the foregoing, it is the recommendation of the undersigned that plaintiff's motion for summary judgment be denied and defendant's motion for summary judgment be granted.

In making this recommendation, the undersigned does not suggest that plaintiff is totally free of all pain and subjective discomfort. The objective medical record simply fails to document the existence of any condition which would reasonably be expected to result in total disability for all forms of substantial gainful employment. It appears that the ALJ properly considered all of the objective and subjective evidence in adjudicating plaintiff's claim for benefits. It follows that all facets of the Commissioner's decision in this case are supported by substantial evidence. It is recommended, therefore, that defendant's motion for summary judgment be granted.

The Clerk is directed immediately to transmit the record in this case to the Hon. James C. Turk, Senior United States District Judge. Both sides are reminded that pursuant to Rule 72(b) they are entitled to note any objections to this Report and Recommendation within ten (10) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not

13

specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection.

The Clerk of the Court hereby is directed to send a certified copy of this Report and Recommendation to all counsel of record.

**ENTER:** This 25th day of April, 2007.

Michael F. Urbanski
United States Magistrate Judge